UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————

MARIA GUTIERREZ,

                    Plaintiff,            13 Civ. 3502 (JGK)

        - v.-                             MEMORANDUM
                                          OPINION AND ORDER
THE CITY OF NEW YORK, ET AL.,

                    Defendants.
————————————————————————

JOHN G. KOELTL, District Judge:

    Plaintiff Maria Gutierrez brings this action against the
City of New York, Police Officers Gaetano Fundaro and Michael
Ernst, and twelve John Doe Police Officers alleging violations
of her rights under 42 U.S.C. § 1983 and other federal statutes.
The defendants now move for summary judgment pursuant to Federal
Rule of Civil Procedure 56(a).  In response to the motion, the
plaintiff withdrew her claim against the City of New York and
limited her claims to false arrest and use of excessive force
against Officers Fundaro and Ernst and a claim of failure to
intervene against Officer Fundaro, all in alleged violation of §
1983.

    Because a genuine issue of material fact exists whether
there was probable cause to stop the car in which the plaintiff
was riding, the Court denies the defendants' motion for summary
judgment as to the claim of false arrest.  It grants the motion

for summary judgment on the claims of excessive force and
failure to intervene against Officer Fundaro.

## I.

Unless otherwise noted, the following facts are undisputed.

The plaintiff, Maria Gutierrez, is a Hispanic citizen of
New York.  She and her son, Luis Veras, live in the Bronx.  In
August 2010, defendants Gaetano Fundaro and Michael Ernst were
New York City Police Officers assigned to the 41st Precinct in
the Bronx.  Def.'s 56.1 Stmt. at ¶¶ 1-5; Pl.'s 56.1 Resp. at ¶¶
1-5.

On the evening of August 1, 2010, after visiting
Gutierrez's mother, Veras and Gutierrez were driving home along
Prospect Avenue in the Bronx.  Veras was driving the car and
Gutierrez was in the front passenger seat.  At approximately
10:50 PM, Officer Fundaro initiated a traffic stop and issued
Veras a ticket for Reckless Driving.  During the traffic stop,
Officer Ernst arrived in a separate patrol car.  Neither Fundaro
nor Ernst interacted with Gutierrez during this traffic stop.
Def.'s 56.1 Stmt. at ¶¶ 6-10; Pl.'s 56.1 Stmt. at ¶¶ 6-10.

There is a dispute as to the circumstances at the first
stop.  Veras testified that Officer Fundaro approached the car
and said to Veras that Veras almost crashed into Fundaro at an
intersection and that Veras had run a red light.  Veras Dep. at

34.   Officer Fundaro testified that he simply asked for Veras's license, registration, and insurance, but Veras continued to talk to Gutierrez.   Eventually, according to Officer Fundaro, Veras flung the documents out the car window, and Officer Fundaro picked the documents up off the ground and simply said, "[B]e with you shortly."   Fundaro Dep. at 20.   Veras, on the other hand, said he was "100 percent" cooperative.   He turned off the ignition and placed the keys on top of the roof of the car.   Veras Dep. at 37.

After Officer Fundaro issued Veras the traffic summons, Veras was permitted to leave.   However, shortly after Veras drove away, Officer Ernst initiated a second traffic stop (the "Second Stop") for conduct he allegedly observed immediately after the first stop.   At the Second Stop, Veras was issued summonses for making an unsafe start, disobeying pavement markings, moving from a lane unsafely, failing to signal a lane change, and speeding.   Veras was eventually adjudicated guilty on each of these offenses at an administrative hearing.   Def.'s 56.1 Stmt. at ¶¶ 10-14; Pl.'s 56.1 Resp. at ¶¶ 10-14.   Veras appealed the guilty adjudication but this appeal was denied, and he eventually paid the five summonses.   Def.'s 56.1 Stmt. at ¶ 40; Pl.'s 56.1 Resp. at ¶ 40.

The basis for the Second Stop is disputed.   Officer Fundaro testified that after the first stop, Veras revved the car's

3

engine and took off with tires screeching, almost collided with another car coming down the block, and then continued to drive recklessly.  Fundaro Dep. at 27-28.  Veras testified that he did not speed away or drive recklessly before he was promptly stopped again by the police.  Veras Dep. at 39-40.  Gutierrez also testified that Veras pulled away "normally" and did not drive recklessly for the one or two minutes that elapsed before the car was stopped again.  Gutierrez Dep. at 40-41.  Veras testified that when he was pulled over, Officer Ernst "almost crashed into" him, and, after Officer Ernst got out of his police car, Officer Ernst came rushing toward Veras and told him "that for being a smart ass I was going to be under arrest, that was my charge."  Veras Dep. at 41-42, 43.

During the Second Stop, one of the officers called for additional units, and numerous additional patrol cars arrived on the scene.  Veras felt threatened by the police and made a telephone call to 911 to report the aggressive nature of the stop.  Both Officers Ernst and Fundaro approached the driver's side of the vehicle.  The officers demanded that Veras get out of the vehicle but Veras did not comply.  At about the same time, one of the officers broke the driver's side window, and Officer Ernst sprayed pepper spray into the vehicle while both Veras and Gutierrez were still inside.  Def.'s 56.1 Stmt. at ¶¶ 15-20, 25-26; Pl.'s 56.1 Stmt. at ¶¶ 15-20, 25-26.  The

4

plaintiff alleges that while the officer discharged the pepper spray through the driver's side window, she was hit by it. Gutierrez Dep. at 45-46.

Eventually, Veras was removed from the vehicle and brought to the ground where he was handcuffed and arrested on charges of reckless endangerment, resisting arrest, obstructing governmental administration, and reckless driving.  Meanwhile, other unidentified officers demanded that Gutierrez exit the car.  She complied and was handcuffed, placed in a patrol car, and transported to the 41st precinct by unidentified officers. Def.'s 56.1 Stmt. at ¶¶ 21-32, 39; Pl.'s 56.1 Resp. at ¶¶ 21-32, 39.  The plaintiff alleges that the handcuffs were applied too tightly, causing her pain, and that when she complained of the pain, no officer, including Officer Fundaro, would loosen them for her.  Additionally, the plaintiff alleges that when she was placed in the patrol car, an unidentified officer forcefully twisted her neck causing her pain that continues to interfere with her ability to perform daily activities.  Gutierrez Dep. at 51, 54, 60-61.

At the precinct, Officer Fundaro issued the plaintiff a summons for disorderly conduct.  The plaintiff was released from custody at approximately 11:30 PM the same night.  The charge of disorderly conduct was dismissed prior to Gutierrez's first court appearance on the matter.  The charges against Veras were

also eventually dismissed.  Def.'s 56.1 Stmt. at ¶¶ 33-39; Pl.'s 56.1 Resp. at ¶¶ 33-39.

In May 2013, the plaintiff brought this action  against the City of New York and Officers Fundaro and Ernst, in their official capacity and individually, as well as twelve John Doe Police Officers, alleging violations of her civil rights under § 1983 and other federal statutes.  An amended complaint was filed in October 2013.

The plaintiff alleges physical, emotional, and financial injuries from the incident.  See First Am. Compl. ¶ 61.

The defendants now move for summary judgment.

## II.

The standard for granting summary judgment is well established.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution."  Gallo v. Prudential Residential Servs.,

6

L.P., 22 F.3d 1219, 1224 (2d Cir. 1994).  The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.  The substantive law governing the case will identify the material facts and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223.  Summary judgment is improper if "there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party."  See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).

### III.

The defendants move for summary judgment dismissing the claim for false arrest in violation of § 1983.  They argue that

they were not personally involved in the plaintiff's arrest in connection with the Second Stop.  They argue that while they were involved in the stop of the car, their efforts were directed at the driver of the car, Veras, and that other officers were responsible for approaching Gutierrez on the passenger side and placing her in custody.  They also argue that the validity of the Second Stop is "not in issue" because Veras was adjudicated guilty of five traffic violations on which the stop was based.  Mem. of Law in Support of Def.'s Mot. for Summ. J. at 9 n.4 ("Def.'s Summ. J. Mot.").

"[A]n arrest must be supported by probable cause or else it violates the Fourth Amendment." United States v. Valentine, 539 F.3d 88, 93 (2d Cir. 2008) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)).  Section 1983, to the extent that it provides a remedy for violations of the Fourth and Fourteenth Amendments, protects an individual's right to be free from arrest without probable cause.  See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). When analyzing § 1983 claims for false arrest, courts generally look "to the law of the state in which the arrest occurred." Davis v. Rodriguez, 364 F.3d 424, 433 (2d Cir. 2004) (collecting cases).  "Under New York law, a plaintiff claiming false arrest must show, *inter alia*, that the defendant intentionally confined [the plaintiff] without [the plaintiff's] consent and without justification." Amore v. Novarro, 624 F.3d 522, 532 n.13 (2d

Cir. 2010) (internal quotation marks and citation omitted). This requires the personal involvement of the defendant. Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006).  "'The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983.'" Amore, 624 F.3d at 536 (quoting Weyant, 101 F.3d at 852). "Probable cause exists if at the time of the arrest 'the facts and circumstances within th[e officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" Id. (quoting Beck, 379 U.S.at 91) (alterations in original).

The Supreme Court has made clear that a police officer may order a passenger out of a vehicle during a lawful traffic stop. Maryland v. Wilson, 519 U.S. 408, 410 (1997).  Several courts of appeals have extended that ruling to conclude that a police officer also may order a passenger to remain in a vehicle during a lawful traffic stop.  See, e.g., Rogala v. District of Columbia, 161 F.3d 44, 45, 53 (D.C. Cir. 1998) (summary order); Coffey v. Morris, 401 F. Supp. 2d 542, 545 (W.D. Va. 2005) (collecting cases).  New York courts have held likewise.  See, e.g., People v. Forbes, 728 N.Y.S.2d 64, 64 (App. Div. 2001).

It follows, then, that if the traffic stop was lawful, Gutierrez's confinement within the vehicle during the stop did not violate her rights to be free from an unreasonable seizure. The defendant argues that the validity of the stop is not at issue because Veras was adjudicated guilty of five traffic violations on which the stop was based.  Def.'s Summ. J. Mot. at 9 n.4 (citing Def.'s 56.1 Stmt. at ¶¶ 13-14).  However, the plaintiff contends that it has not been established that probable cause existed for the Second Stop.  Oral Arg. Tr. at 9. In their deposition testimony, both Gutierrez and Veras denied that there was any basis for the Second Stop.  See Gutierrez Dep. at 40-41; Veras Dep. at 39-41.  Specifically, Gutierrez testified that Veras pulled away from the curb after the initial stop "normally," did not cross into bike lanes, did not almost hit another car, and did not drive in a fashion that made her feel unsafe.  See Gutierrez Dep. at 40-41.

There is a disputed issue of material fact as to whether there was probable cause for the Second Stop.  The only way the defendants suggest to dispose of that issue is to apply collateral estoppel or issue preclusion and find that Gutierrez is barred from disputing that issue because of the adjudication of the parking violations against her son, Veras, before the

traffic court.  <u>See</u> Reply Mem. of Law in Support of Def.'s Mot. for Summ. J. at 9 ("Reply Mem.").[1]

"The law of the jurisdiction in which the earlier actions took place governs the principles of claim and issue preclusion."  <u>Xu v. City of New York</u>, No. 08-cv-11339 (DLC), 2010 WL 3060815, at *3 (S.D.N.Y. Aug. 3, 2010) <u>on reconsideration in part sub nom.</u> <u>Yan Ping Xu v. City of New York</u>, No. 08-cv-11339 (DLC), 2010 WL 4878949 (S.D.N.Y. Dec. 1, 2010).  Here, Veras's adjudications occurred in a New York court, and New York preclusion law applies.  <u>See</u> <u>Beechwood Restorative Care Ctr. v. Leeds</u>, 436 F.3d 147, 152 (2d Cir. 2006) (citations omitted) (emphasis in original) (applying New York law to deny preclusive effect of a prior New York administrative proceeding in a § 1983 action).

"Under New York law, issue preclusion, which is often called collateral estoppel, applies to preclude subsequent

---

[1] The defendants cite <u>Johnson v. Watkins</u>, 101 F.3d 792 (2d Cir. 1996), for the principle that collateral estoppel bars "Veras from contesting the validity of the car stop."  Reply Mem. at 9.  But it is not Veras but Gutierrez who is challenging the validity of the stop.  Moreover, <u>Johnson</u> does not help the defendants' argument.  In <u>Johnson</u>, the trial court determined there was probable cause to arrest the plaintiff at a suppression hearing.  The plaintiff was later acquitted at trial and brought a § 1983 claim for false arrest against the officers.  The Court of Appeals held that, because of the acquittal, the plaintiff "had no opportunity to appeal the finding of probable cause," and, thus, "the doctrine of collateral estoppel [did] not bar suit."  <u>Johnson</u>, 101 F.3d at 793.  In that case, "full and fair litigation was absent and collateral estoppel d[id] not apply."  <u>Id.</u>  In this case, the plaintiff never had an opportunity to appeal the summonses against Veras because she was not a party to that proceeding.  The other cases the defendants cite address what constitutes probable cause under the Fourth Amendment, not collateral estoppel, and are of no moment.

litigation when an issue was (1) necessarily decided in the
first action, (2) is decisive in the later action, and (3) the
party against whom the doctrine is asserted had a full and fair
opportunity to litigate the issue in the first proceeding." Xu,
2010 WL 3060815, at *3 (internal quotation marks and citations
omitted).   New York law allows the invocation of collateral
estoppel "in a subsequent action or proceeding to prevent a
party from relitigating an issue decided against that party in a
prior adjudication." Staatsburg Water Co. v. Staatsburg Fire
Dist., 527 N.E.2d 754, 756 (N.Y. 1988) (emphasis added) (finding
collateral estoppel inapplicable where defendant was not a party
to the earlier proceeding); see also Restatement (Second) of
Judgments § 27 (1982) (defining collateral estoppel as when,
inter alia, "the determination is conclusive in a subsequent
action between the parties, whether on the same or a different
claim." (emphasis added)).

Issue preclusion has been applied not only against parties,
but also against "privies." See, e.g., Buechel v. Bain, 766
N.E.2d 914, 919 (N.Y. 2001).   Privity is a relationship where a
person is so identified in interest with another such that the
person could represent the privy's interest in the legal
proceeding. See, e.g., id. at 919-20.   In this case, Veras
represented only his own interest in defending against his

12

traffic violations and Gutierrez had no interest in the outcome of those traffic court proceedings to which she was not a party.

Gutierrez did not have "a full and fair opportunity" to contest the probable cause issue where the prior adjudication involved a different party who was not in privity with Gutierrez, the plaintiff in this action.  See Staatsburg Water Co., 527 N.E. at 756; see also Ryan v. N. Y. Tel. Co., 467 N.E.2d 487, 490 (N.Y. 1984) ("'[A] judgment rendered jurisdictionally and unimpeached for fraud shall be conclusive, as to the questions litigated and decided, upon the parties thereto and their privies.'" (quoting Fulton Cnty. Gas & Elec. Co. v. Hudson River Tel. Co., 93 N.E. 1052, 1055 (N.Y. 1911)).

Because the plaintiff was not a "full participant[]" in the prior proceeding, see Schwartz v. Pub. Admin. of the Cnty. of Bronx, 246 N.E.2d 725, 729 (N.Y. 1969) -- indeed, not a participant at all -- issue preclusion does not foreclose the material issue of fact as to whether probable cause existed for the Second Stop.

The defendants also argue that they were not personally involved in detaining Gutierrez because other officers actually approached the passenger side of the vehicle and were responsible for removing Gutierrez from the vehicle and placing her in handcuffs.  However, there are at least genuine issues of material fact as to whether Gutierrez was seized when the

vehicle was stopped by Ernst, allegedly without probable cause, and when Officers Fundaro and Ernst approached the driver's side of the car. A reasonable juror could find that Gutierrez was not free to leave at that point.

Because there are genuine issues of material fact as to whether defendants Ernst and Fundaro unreasonably seized the plaintiff without probable cause in the course of the Second Stop, summary judgment cannot be granted on this claim. See Celotex Corp., 477 U.S. at 322; Valentine, 539 F.3d at 93.

## IV.

The defendants also move for summary judgment dismissing the plaintiff's claims for a violation of § 1983 based on the alleged use of excessive force by the defendants.

"The Fourth Amendment prohibits the use of excessive force in making an arrest, and whether the force used is excessive is to be analyzed under the Amendment's 'reasonableness' standard." Imani Brown v. City of New York, No. 14-2611, 2015 WL 4924395, at *5 (2d Cir. Aug. 19, 2015) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)).  "Because the excessive force and false arrest factual inquiries are distinct, establishing a lack of probable cause to make an arrest does not establish an excessive force claim, and vice-versa." Beier v. City of Lewiston, 354 F.3d 1058, 1064 (9th Cir. 2004) (citing Arpin v. Santa Clara

Valley Transp. Agency, 261 F.3d 912, 921–22 (9th Cir. 2001));
see Jones v. Parmley, 465 F.3d 46, 62 (2d Cir. 2006) (Sotomayor,
J.) (rejecting argument that "any force employed by a police
officer would be unlawful so long as probable cause did not
exist"); Zellner v. Summerlin, 494 F.3d 344, 378 (2d Cir. 2007).
Because "the lawfulness of an arrest is irrelevant to an
excessive force analysis," see Sebright v. City of Rockford, 585
F. App'x 905, 907 (7th Cir. 2014) (per curiam) (unpublished)
(collecting cases), the plaintiff's excessive force claim must
be analyzed separately from the false arrest claim.

The plaintiff has not specifically pleaded an excessive
force cause of action in violation of the Fourth and Fourteenth
Amendments, but the Court has broad discretion to grant the
plaintiff leave to amend the complaint to specify excessive
force as a cause of action.  See Foman v. Davis, 371 U.S. 178,
182 (1962) (citing Fed. R. Civ. P. 15(a)).  However, doing so
would be futile.  Although the defendants were on notice of the
alleged facts that would be used by the plaintiff as grounds for
an excessive force claim -- the defendants actually raised (and
refuted) the claim in their own brief in support of this motion
-- these facts do not amount to an actionable claim for
excessive force against the named defendants.

A police officer's use of force is "excessive" in violation
of the Fourth Amendment if it is objectively unreasonable in

light of the facts and circumstances known to the officer.[2]
Lennon v. Miller, 66 F.3d 416, 425-26 (2d Cir. 1995); see also
Maxwell v. City of New York, 380 F.3d 106, 108 (2d Cir. 2004).
It is well established that "[n]ot every push or shove" is
excessive.  Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)
(Friendly, J.), overruled on other grounds by Graham, 490 U.S.
386.  To determine whether the amount of force applied to the
plaintiff was unreasonable the Court should consider: "the
severity of the crime at issue, whether the suspect poses an
immediate threat to the safety of the officers or others, and
whether [the suspect] is actively resisting arrest or attempting
to evade arrest by flight." Graham, 490 U.S. at 396.  Excessive
force claims require "serious or harmful," not "de minimis" use
of force.  Drummond v. Castro, 522 F. Supp. 2d 667, 678-79
(S.D.N.Y. 2007) (internal quotation marks and citations
omitted).

The plaintiff bases her excessive force claim on the force
used to remove her from the vehicle and place her in the squad

---

[2] This standard differs from the subjective standard applied to claims of
excessive force used against prisoners in violation of the Eighth Amendment.
See Whitley v. Albers, 475 U.S. 312, 320-21 (1986).  The Supreme Court
recently clarified that a pretrial detainee needs to show only that the
officers' use of force was objectively unreasonable to prove an excessive
force claim under § 1983 and does not need to show that the officers were
subjectively aware of the unreasonableness of their use of force.  See
Kingsley v. Hendrickson, 135 S. Ct. 2466, 2472-73 (2015).  The Supreme Court
has not resolved the issue of whether a pretrial detainee can bring a Fourth
Amendment claim based on the use of excessive force by a detention facility
employee.  See id. at 2479 (Alito, J., dissenting).

16

car, the tightness of the handcuffs on her wrists, and the use
of pepper spray.  However, many of the plaintiff's allegations
of excessive force are directed at those officers, other than
the defendants, who took the plaintiff out of the car, placed
her in handcuffs, and took her to the 41st Precinct.  The
personal involvement of Officer Ernst and Fundaro, who were
standing on the driver's side of the car, was much more limited.

With respect to pepper spray, there is no evidence Officer
Fundaro used any pepper spray.  Officer Ernst did discharge
pepper spray into the car toward Veras, who was in the driver's
seat.  But he did so only after Veras refused to open the window
of the car and refused to get out of the car.  Veras remained in
the vehicle with the windows up and the door shut and locked.
Veras Dep. at 43-44.  At that point, when an officer broke the
driver's side window, the pepper spray was sprayed through the
driver's side window, although Gutierrez claims she was hit by
the spray.  Gutierrez Dep. at 45-46.

Under the circumstances, no reasonable juror could find
that Officer Ernst used excessive force against Gutierrez based
on the use of the pepper spray.  The plaintiff did not seek any
medical treatment for any of her alleged injuries.[3]  Gutierrez

---

[3] Gutierrez testified that she saw a doctor in the Dominican Republic for high
cholesterol, and in the course of that visit, the doctor gave her a
prescription for unidentified tablets to treat her unease, which she later
stopped taking. See Gutierrez Dep. at 62-64.

17

Dep. at 59-62.  While the use of pepper spray may amount to excessive force, a plaintiff must show more than the "expected side-effects: temporary discomfort and disorientation." Cunningham v. City of New York, No. 04-cv-10232 (LBS), 2007 WL 2743580, at *7 (S.D.N.Y. Sept. 18, 2007) (Sand, J.).  In this case, the plaintiff has failed to show anything more than such side-effects, and the claim for excessive force against Officer Ernst must be dismissed.  Williams v. City of New York, No. 05-cv-10230 (SAS), 2007 WL 2214390, at *12 (S.D.N.Y. July 26, 2007) (granting summary judgment motion dismissing claim of excessive force where police officer used mace against the plaintiff and the result was de minimis, although the plaintiff received medical treatment for his eyes); Cunningham, 2007 WL 2743580, at *7 (granting summary judgment dismissing claim of excessive force based on use of mace where the plaintiff failed to allege injuries); Mills v. Fenger, No. 98-cv-0034E (SC), 2003 WL 251953, at *3 n.13 (W.D.N.Y. Jan. 3, 2003) vacated and remanded on other grounds, 216 F. App'x 7 (2d Cir. 2006); see also Fultz v. Whittaker, 187 F. Supp. 2d 695, 703 (W.D. Ky. 2001) (granting qualified immunity to officer on excessive force claim where officer used pepper spray on plaintiff and the only injury suffered was temporary discomfort and disorientation).

    Moreover, the circumstances under which the pepper spray was used undermine any claim that its use was excessive against

18

Gutierrez.  The officers were reasonably attempting to effect an
arrest of Veras who refused to open the window or door of the
car and to exit the car.  He was the intended target of the
spray, and the secondhand inhalation of pepper spray by persons
who were not the intended targets of the discharge does not
typically give rise to a constitutional claim.  See Lawyer v.
City of Council Bluffs, 361 F.3d 1099, 1105 (8th Cir. 2004)
(officer defendant not liable for excessive force when pepper
spray aimed at driver inadvertently hit passenger in vehicle
when the use of the pepper spray against the driver was
reasonable); Mitchell v. Luckenbill, 680 F. Supp. 2d 672, 687
(M.D. Pa. 2010) (officer defendant not liable where family
members effected by pepper spray were not targets of discharge
during chaos of arrest); see also Brown, 2015 WL 4924395, at *6.
(denying summary judgment on excessive force claim where police
discharged pepper spray directly at plaintiff's face and Graham
factors' analysis "seem[ed] to point toward a determination of
excessive force").  Where courts have allowed secondhand pepper
spray inhalation claims to go forward, exacerbating
circumstances existed, including the presence of young children
and conflicting factual accounts.  See, e.g., Rivers v. O'Brien,
83 F. Supp. 2d 328, 337 (N.D.N.Y. 2000) (genuine issue of
material fact existed whether infant plaintiff was hit with
pepper spray discharged toward group yelling at officer during

arrest).  Such circumstances are not present here.  That the
pepper spray inadvertently affected the plaintiff as well as the
defendant is, at worst, negligence, which cannot be a basis for
a Fourth Amendment excessive force claim.  See Brower v. Inyo
Cnty., 489 U.S. 593, 596 (1989) ("[T]he Fourth Amendment
addresses misuse of power, not the accidental effects of
otherwise lawful government conduct." (internal quotation marks
and citation omitted)).

The plaintiff's claim of excessive force against Officer
Fundaro is based on his alleged failure to loosen Ms.
Gutierrez's handcuffs when she was at the 41st Precinct.  The
plaintiff has not alleged that Officer Fundaro was responsible
for placing the handcuffs on Ms. Gutierrez or transporting her
to the station.  The plaintiff has failed to allege that she
suffered any injuries beyond the de minimis discomfort during
the period she was detained, and she does not claim that she
suffered any demonstrable injuries or sought any medical
treatment as a result of being in handcuffs.

To assess a claim for excessive force based on handcuffing,
the Court should consider evidence that: "1) the handcuffs were
unreasonably tight; 2) the defendants ignored the arrestee's
pleas that the handcuffs were too tight; and 3) the degree of
injury to the wrists." Matthews v. City of New York, 889 F.
Supp. 2d 418, 441-42 (E.D.N.Y. 2012) (quoting Esmont v. City of

New York, 371 F. Supp. 2d 202, 214 (E.D.N.Y. 2005)).  De minimis injuries such as temporary swelling, inflammation, or soreness of the wrists are evidence of de minimis force, and therefore are not sufficient to sustain a Fourth Amendment excessive force claim.  See Drummond, 522 F. Supp. 2d at 679; Wilder v. Village of Amityville, 288 F. Supp. 2d 341, 344 (E.D.N.Y. 2003).

Because the plaintiff has failed to offer any evidence that she suffered any injuries from the use of handcuffs, she has no claim for excessive force against Officer Fundaro based on his failure to loosen them.

The plaintiff has failed to offer sufficient evidence from which a reasonable juror could conclude that she was subjected to excessive force by either Officer Ernst or Officer Fundaro. Summary judgment is therefore granted dismissing that claim.

## V.

The plaintiff's final cause of action is for failure to intervene.  The only claim of failure to intervene is that Officer Fundaro failed to loosen the plaintiff's handcuffs after she asked him to do so.  Officer Fundaro moves for summary judgment dismissing that claim.  Under § 1983, a police officer may be liable for failing to intervene during the use of excessive force.  Curley v. Vill. of Suffern, 268 F.3d 65, 72 (2d Cir. 2001) ("Failure to intercede results in liability where

21

an officer observes excessive force is being used or has reason
to know that it will be."). Such liability attaches when "(1)
the officer had a realistic opportunity to intervene and prevent
the harm; (2) a reasonable person in the officer's position
would know that the victim's constitutional rights were being
violated; and (3) the officer does not take reasonable steps to
intervene." Jean-Laurent v. Wilkinson, 540 F. Supp. 2d 501,
512-13 (S.D.N.Y. 2008).

In this case, summary judgment should be granted dismissing
the claims against Officer Fundaro based on an alleged failure
to intervene because the plaintiff has failed to offer evidence
that she was subjected to excessive force as a result of being
placed in handcuffs. Therefore, there was no constitutional
violation that Officer Fundaro failed to take reasonable steps
to prevent.

**VI.**

The plaintiff has withdrawn claims for supervisory
liability, abuse of process, violation of the Equal Protection
Clause, and denial of Substantive Due Process against defendants
Ernst and Fundaro, and a Monell liability claim against

defendant City of New York.  Therefore, summary judgment is granted dismissing each of those claims.

CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment as to the claim of false arrest is **denied**.  The defendants' motion for summary judgment dismissing the remaining claims is **granted**.

**SO ORDERED**

**Dated:      New York, New York**
**            September 19, 2015**

_____/s/_____<br>John G. Koeltl<br>United States District Judge